UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LWAY MU,

                      Petitioner,

    -vs-

MATTHEW G. WHITAKER, in his official capacity as Acting Attorney General, U.S. Department of Justice; KIRSTJEN M. NIELSEN, in her official capacity as Secretary, U.S. Department of Homeland Security; JEFFREY SEARLS, in his official capacity as Facility Director, Buffalo Federal Detention Facility; THOMAS E. FEELEY, in his official capacity as Field Office Director, Buffalo Field Office, U.S. Immigration & Customs Enforcement,

                      Respondents.

**No. 6:18-cv-06924-MAT**
**DECISION AND ORDER**

## I. Introduction

Proceeding *pro se*, Lway Mu ("Mu" or "Petitioner") commenced this habeas proceeding pursuant to 28 U.S.C. § 2241 ("§ 2241") against respondents Matthew G. Whitaker,[1] Kirstjen M. Nielsen, Jeffrey Searls, and Thomas E. Feeley (hereinafter, "the Government" or "Respondent") challenging his continued detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS"). For the

---

[1] The Clerk of Court is directed update the case caption pursuant to Rule 25(d) of the Federal Rules of Civil Procedure so as to reflect that William P. Barr has assumed the role of United States Attorney General, replacing Acting Attorney General Matthew Whitaker.

reasons discussed below, the request for a writ of habeas corpus is denied, and the Petition (Docket No. 1) is dismissed.

**II. Factual Background**

Mu, a native and citizen of Burma, arrived in the United States on June 26, 2011, at Los Angeles, California, on a refugee visa. Mu became a lawful permanent resident on June 26, 2013.

On January 2, 2016, in the course of a traffic stop in Spencer County, Indiana, Mu was arrested after a K-9 officer alerted around his vehicle. The state police trooper discovered substances that field-tested positively for methamphetamine and marijuana. On January 7, 2016, Mu was charged with Possession of Methamphetamine, in violation of Indiana Code ("I.C.") 35-48-4-6.1(a); Possession of Marijuana, in violation of I.C. 35-48-4-11(a)(1); and Possession of Paraphernalia, in violation of I.C. 35-48-4-8.3(b)(1). Mu subsequently pleaded guilty, on March 10, 2016, to Possession of Marijuana, in violation of I.C. 35-48-4-11(a)(1) and Possession of Paraphernalia, in violation of I.C. 35-48-4-8.3(b)(1), in Spencer Circuit Court, Indiana. He was sentenced to 140 days' incarceration.

After being released, Mu returned to Rochester, New York. He was arrested on June 2, 2017, and charged with Arson in the Second Degree, Intentional Fire with Person Present under New York Penal Law. On July 28, 2017, he pleaded guilty to Criminal Mischief in

Rochester City Court, in satisfaction of the arson charge, and was sentenced to 3 years' probation.

On October 30 2017, Mu was arrested by DHS officers at the Monroe County Probation office, in Rochester New York, when he reported for probation relating to his Criminal Mischief conviction. DHS made an individualized custody determination and decided to detain Mu because he is a noncitizen alien under 8 U.S.C. § 1226(c) ("§ 1226(c)") and therefore not subject to release during removal proceedings.

Mu requested review of the custody determination by an immigration judge ("IJ"), but the IJ found that he lacked jurisdiction due to the language of § 1226(c) prohibiting the granting of bond to noncitizens convicted of certain crimes.

On October 30, 2017, Mu was served with a Notice to Appear ("NTA") charging him with being subject to removal from the United States, pursuant to Immigration and Nationality Act ("INA") § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), as an alien convicted of a crime involving moral turpitude.

Mu's removal hearing originally was scheduled for December 5, 2017, but was adjourned until January 11, 2018, so that Mu could obtain counsel. The hearing had to be adjourned again due to the inability to locate a Karen language interpreter. On January 23, 2018, Mu requested another adjournment to seek an attorney, and the hearing was moved to February 13, 2018. At the February 13, 2018,

hearing, Mu requested a further adjournment while he sought an attorney; the next hearing was scheduled for March 1, 2018. On March 1 and March 13, a Karen language interpreter could not be located, requiring adjournments of the hearing until May 17, 2018. On May 17, 2018, Mu's attorney was not prepared to identify the relief sought, resulting in an adjournment until June 5, 2018. On June 5, 2018, Mu's attorney indicated his intention to move to terminate the proceedings, and the hearing was rescheduled to July 10, 2018. For an unknown reason, this hearing was then adjourned to July 26, 2018.

On July 26, 2018, an IJ denied Mu's Motion to Terminate Removal Proceedings. A removal hearing was scheduled for October 10, 2018.

On October 10, 2018, an IJ denied Mu's application for asylum and withholding of removal, and ordered Mu to be removed from the United States to Burma. Mu appealed the IJ's determination to the Bureau of Immigration Appeals ("BIA"); the appeal was pending as of March 14, 2019, the date the Government filed its Answer and Return.

Mu is presently being held at the Batavia Federal Detention Facility pursuant to § 1226(c) because he is a criminal noncitizen alien. The IJ's Order of Removal will not be deemed final until affirmed by the BIA.

Mu filed the instant Petition (Docket No. 1) on December 17, 2018, asserting that Immigration and Customs Enforcement ("ICE") has failed to comply with substantive and procedural due process because it has failed to provide a "searching periodic review" of his custody status, has failed to demonstrate that special circumstances exist to justify his prolonged detention, and has failed to prove that he poses a danger to national security or is a flight risk. Petition ("Pet.") at 4 (citing *Zadvydas*, *supra*). Petitioner also contends that his prolonged detention without the possibility of bond violates the United States Constitution, and relies on two Third Circuit cases finding that there is a "time limiting provision" in § 1226 which prevents the prolonged detention of inadmissible or excludable aliens. *Id.* (citations omitted). Mu seeks injunctive relief in the following forms: an order directing the Government to promptly release him because there is no likelihood he will be removed to Burma in the reasonably foreseeable future; and order directing the Government not to remove him from the Western District of New York during the pendency of this petition. *Id.* at 5.

The Government filed an Answer and Return (Docket No. 6), a Memorandum of Law (Docket No. 7), a Declaration in Support of the Memorandum (Docket No. 8) with Exhibit 1 (Docket No. 8-1), and a Declaration in Response to the Petition (Docket No. 9) with Exhibit A (Docket No. 9-1). Petitioner filed a Reply (Docket No. 10). The

matter was transferred to the undersigned on May 21, 2019 (Docket No. 11).

**III. Scope of Review**

Title 28 U.S.C. § 2241 grants this Court jurisdiction to hear habeas corpus petitions from aliens claiming they are held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)). However, the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 199 Stat. 231 (May 11, 2005) amended the Immigration and Nationality Act ("INA") to provide that petitions for review filed in the appropriate Courts of Appeals were to be the "sole and exclusive means for judicial review" of final orders of removal. *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 113 (2d Cir. 2008) (citing REAL ID Act § 106(c); 8 U.S.C. § 1252(a)(5)). In other words, the REAL ID Act "strips district courts of jurisdiction to hear habeas petitions challenging final orders of deportation. . . ." *De Ping Wang v. Dep't of Homeland Sec.*, 484 F.3d 615, 615-16 (2d Cir. 2007). District courts still are empowered to grant relief under § 2241 to claims by aliens under a final order of removal who allege that their post-removal-period detention and supervision are unconstitutional. *See Zadvydas*, 533 U.S. at 687-88; *see also Hernandez v. Gonzales*, 424 F.3d 42, 42-43 (1st Cir. 2005) ("The Real ID Act deprives the district courts of habeas jurisdiction to review orders of removal,

. . . [but] those provisions were not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'") (quoting H.R. Cong. Rep. No. 109-72, at *43 2873 (May 3, 2005)).

Although this Court has jurisdiction to decide statutory and constitutional challenges to civil immigration detention, it does not have jurisdiction to review the discretionary decisions of the Attorney General. *Zadvydas*, 533 U.S. at 688 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority of which is specified under this subchapter to be in the discretion of the Attorney General."). "[W]hether the district court has jurisdiction will turn on the substance of the relief that a [petitioner] is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (*per curiam*).

**IV. Discussion**

   **A. Petitioner Is Detained Pursuant to § 1226 and *Zadvydas* Does Not Apply**

The Government argues that Petitioner is presently detained pursuant to § 1226(c) because the IJ's order of removal is on appeal before the BIA. In other words, it is not deemed a "final" order of removal. The Government is correct that Mu's detention is governed by § 1226(c), entitled "Detention of criminal aliens." This section provides for mandatory detention of certain criminal aliens: "Section 1226(c) in turn states that the Attorney General

-7-

'shall take into custody any alien' who falls into one of the enumerated categories involving criminal offenses and terrorist activities, § 1226(c)(1), and specifies that the Attorney General 'may release' one of those aliens "only if the Attorney General decides" both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk, § 1226(c)(2)." *Jennings v. Rodriguez*, 138 S. Ct. 830, 833 (2018) (quoting 8 U.S.C. § 1226(c)). Thus, "[a]s long as the detained alien is *not* covered by § 1226(c), the Attorney General 'may release' the alien on 'bond . . . or conditional parole.'" *Jennings*, 138 S. Ct. at 847 (quoting 8 U.S.C. § 1226(a); ellipsis in original; emphasis added).

The Supreme Court found that the Ninth Circuit in the appeal below "erroneously concluded that periodic bond hearings are required under the immigration provisions at issue . . . [including § 1226(c)]," 138 S. Ct. at 851. To the contrary, the Supreme Court noted, "§ 1226(c) does not on its face limit the length of the detention it authorizes. In fact, by allowing aliens to be released 'only if' the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute." *Jennings*, 138 S. Ct. at 846.

The Supreme Court in *Jennings* decided only a question of statutory interpretation; it did not reach the aliens' constitutional arguments and remanded them to the Ninth Circuit for consideration in the first instance. 138 S. Ct. at 851; *see also Hechavarria v. Sessions*, 891 F.3d 49, 58 (2d Cir. 2018), *as amended* (May 22, 2018) (discussing *Jennings* and remanding case to district court for consideration in the first instance of the appropriate remedy for alien detained under § 1226(c)). Thus, 2. Thus, *Jennings* left open the possibility that individual detentions without bond hearings might be so lengthy as to violate due process. *See Hechavarria*, 891 F.3d at 58; *Cabral v. Decker*, 331 F. Supp.3d 255, 260 (S.D.N.Y. 2018) (citing *Sajous v. Decker*, No. 18cv2447, 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018)). Following *Jennings*, courts in the Second Circuit have reached differing conclusions regarding as-applied constitutional challenges to immigration detention like Petitioner's. The Court finds that, under the circumstances of this case, Mu's right to due process has not been violated. Accordingly, the Court need not opine as to the specific constitutional procedures, if any, that noncitizen criminal aliens detained under § 1226(c) are owed.

The Government notes that a number of district courts in the Second Circuit have found that an alien's own litigation strategy is a key consideration when considering due process challenges. Resp't Mem. at 10 (citing *Sigal v. Searls*, No. 1:18-CV-00389 EAW,

2018 WL 5831326, at *6 (W.D.N.Y. Nov. 7, 2018) (citing *Doherty v. Thornburgh*, 943 F.2d 204 (2d Cir. 1991) & collecting district court cases)). The alien in *Doherty*, a citizen of the United Kingdom, had been held in custody under 8 U.S.C. § 1252, without bail for eight years during which he "skillfully exercised his rights under the deportation statute, delaying and perhaps preventing the outcome sought by the government." 943 F.2d at 211. The Second Circuit found that the petitioner's substantive due process rights had not been violated because the delay was occasioned by his own "litigation strategy." Although "perfectly permissible," Doherty could "not rely on the extra time resulting therefrom to claim that his prolonged detention violates substantive due process." *Id.* at 211.

The Government indicates that it was ready to proceed with Mu's hearing on December 5, 2017, less than two months after his custody began on October 30, 2017. All of the delays, the Government argues, were attributable to Mu's litigation strategy and therefore he cannot rely on them to establish a due process violation.

This Court is reluctant to characterize the adjournments Mu requested so that he could obtain counsel as a shrewd "litigation strategy" such as the one utilized by the petitioner in *Doherty*, *supra*. While aliens have no Sixth Amendment right to counsel in deportation hearings, which are civil in nature, *Saleh v. United*

-10-

*States Dep't of Justice*, 962 F.2d 234, 241 (2d Cir. 1992) (citation omitted), "aliens in removal proceedings do have a statutory and regulatory right to the assistance of counsel," *Gutierrez v. Reno*, No. 99 CIV. 11036 RWS, 2000 WL 1643585, at *3 (S.D.N.Y. Nov. 1, 2000 (citing 8 U.S.C. § 1229a(b)(4)(A) ("alien shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings."); 8 U.S.C. § 1362 ("In any removal proceedings before an immigration judge . . . the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose."); other citations omitted). And, once Mu obtained counsel, there was another adjournment occasioned by the Government's inability to find an interpreter who spoke Mu's native language. That delay should not be attributed to Mu.

However, beginning on May 17, 2018, through the date he was ordered removed, the delays fairly can be said to be attributable to Mu's "litigation strategy." On May 17, 2018, Mu's attorney was not prepared to identify the relief sought, occasioning an adjournment until June 5, 2018. On June 5, 2018, Mu's attorney indicated his intention to move to terminate the proceedings, resulting in a rescheduling of the hearing on July 10, 2018, which, for reasons unknown, was rescheduled to July 26, 2018. On July 26, 2018, an IJ denied Mu's Motion to Terminate Removal Proceedings. A

-11-

removal hearing was scheduled for October 10, 2018, on which date an IJ denied Mu's application for asylum and withholding of removal and ordered Mu's removal to Burma. Mu then appealed the IJ's order to the BIA; that appeal remains pending. The Court concludes that the delays from May 17, 2018, to the present time were attributable to strategic decisions by Mu and his attorney. *See Demore v. Kim*, 538 U.S. 510, 530–31 (2003) (while the length of the alien's detention under § 1226(c) was longer than average, part of the delay was occasioned by his request for a continuance of his removal hearing). Likewise, there is no evidence in the record that the Government has unreasonably prolonged Mu's removal proceedings. *See Baker v. Johnson*, 109 F. Supp.3d 571, 586 (S.D.N.Y. 2015) ("To the extent the proceedings are extended by appeals or by motion practice initiated by Petitioner, 'the Court properly takes into account the fact that [Petitioner's] continued detention' may be at least in part 'a result of [his] choice to appeal' and otherwise prolong the proceedings with motion practice.") (quotation omitted; citing *Adler v. U.S. Dep't of Homeland Sec.*, No. 09 CIV.4093(SAS), 2009 WL 3029328, at *2 (S.D.N.Y. Sept. 22, 2009) ("[T]here is no evidence in the record that the government has dragged its feet. Every adjournment in Adler's proceedings was upon Adler's motion. Although it is Adler's right to seek relief from deportation, the delays caused by his motions should not be attributed to the government.") (footnote omitted)).

Moreover, the record fails to indicate that Mu's continued detention will last indefinitely or that his ultimate removal is unlikely; if Mu's appeal is denied and a final order of removal is entered against him, there do not appear to be any institutional or other barriers to his deportation. *Young v. Aviles*, 99 F. Supp.3d 443, 456 (S.D.N.Y. 2015) (citing *Johnson v. Orsino*, 942 F. Supp.2d 396, 410 (S.D.N.Y. 2013) ("[T]here is no indication that Johnson's continued detention pending resolution of his appeal to the BIA will last indefinitely or for a lengthy period of additional time. Significantly, if Johnson's appeal is denied and a final order of removal is entered against him, there will be no impediment to his deportation."); other citations omitted); *cf. Zadvydas*, 533 U.S. at 702 (holding that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future"). Thus, although Mu has remained in custody since October 30, 2017, the totality of the circumstances leads the Court to conclude that his detention without a bond hearing has not crossed the line into a due process rights violation at this point in time. "If, at some point in the future, there are factors involving the length of his detention [which] implicate constitutional concerns, the petitioner is entitled to file another habeas petition." *Andreenko v. Holder*, No. 09CIV8535CMJCF, 2010 WL 2900363, at *4 (S.D.N.Y. June 25, 2010) (citing *Sulayao v. Shanahan*, No. 09 Civ. 7347, 2009 WL 3003188, at

*8 (S.D.N.Y. Sept. 15, 2009); *Samuel v. Immigration and Naturalization Service*, No. 01 Civ. 3413, 2005 WL 120221, *2 (S.D.N.Y. Jan. 20, 2005) (denying habeas petition without prejudice to re-filing once stay of deportation lifted, when petitioner will have "burden of showing that there is good reason to believe that there is no significant likelihood of removal in the near future").

**B. The Requested Injunctive Relief Is Unavailable**

Petitioner argues that any change in his place of confinement would be an abuse of the Attorney General's discretion. Respondent counters with several arguments as to why the Court lacks jurisdiction over this request and why it lacks merit, including that any decisions regarding the place of confinement for noncitizens subject to removal are within the Attorney General's discretion, and that the authority to transfer Petitioner to another facility rests with DHS. *See* 8 U.S.C. §§ 1231(g)(1), 1252(a)(2)(B)(ii); *Calla-Collado v. Att'y Gen. of the U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) (stating that Congress vested DHS "with authority to enforce the nation's immigration laws[,]" and that, as a "part of DHS, ICE 'necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another'") (quotation and citation omitted).

The Court concludes that it does not have the authority to dictate to DHS where Petitioner should be housed. "The Attorney

-14-

General is mandated to 'arrange for appropriate places of detention for aliens detained pending removal.'" *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (citing 8 U.S.C. § 1231(g)(1)). "The Attorney General's discretionary power to transfer aliens from one locale to another, as [he or] she deems appropriate, arises from this language." *Id.* (holding that "a district court has no jurisdiction to restrain the Attorney General's power to transfer aliens to appropriate facilities by granting injunctive relief in a *Bivens* class action suit") (citing *Rios-Berrios v. INS*, 776 F.2d 859, 863 (9th Cir. 1985) (interpreting former statute now codified as § 1231(g); *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988); footnote and other citation omitted)). Petitioner's request for an injunctive relief accordingly is denied as beyond this Court's jurisdiction.

**V. Conclusion**

For the foregoing reasons, the Petition is dismissed without prejudice as premature to the extent it alleges a due process violation. The requests for injunctive relief are denied. No certificate of appealability shall issue. The Clerk of Court is directed to update the case caption pursuant to Rule 25(d) of the Federal Rules of Civil Procedure so as to reflect that William P. Barr has assumed the role of United States Attorney General, replacing Acting Attorney General Matthew Whitaker. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**s/ Michael A. Telesca**

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated: June 4, 2019
 Rochester, New York.